**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| | ) | No.  CR 11-2628-TUC-CKJ |
| vs. | ) | |
| | ) | |
| Marcos Soto-Mendoza, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court are the Motions for Compassionate Release/Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A)  (Docs. 244, 257) filed by Marcos Soto-Mendoza ("Soto-Mendoza").  The government has filed a response (Doc. 260).

*Background*

Soto-Mendoza was convicted by a jury of five counts of an eight count indictment.  Soto-Mendoza was sentenced to 120 months imprisonment as to counts 2 and 3 of the indictment (Bringing in Illegal Aliens for Profit, 8 U.S.C. § 1324(a)(2)(B)(ii), and 180 months imprisonment at to counts 4 through 6 of the indictment (Bringing in Illegal Aliens for Profit, 8 U.S.C. § 1324(a)(1)(B)(ii).   The sentences were ordered to run concurrently to each other and to be followed by 36 months of supervised release. (Doc. 202).   The Ninth Circuit Court of Appeals affirmed Soto-Mendoza's conviction and sentence. *United States v. Soto-Mendoza*, 641 F. App'x 691, 693 (9th Cir. 2016) (unpublished).

On September 30, 2021, Soto-Mendoza filed a Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (Doc. 244).  On February 6, 2022,

1  appointed counsel filed an Amended Motion for Relief Under 18 U.S.C. § 3582(c)(1)(A)(i)

2  (Doc. 257).  The government has filed a response (Doc. 260).

3        According to the Bureau of Prisons website, Soto-Mendoza has a scheduled release

4  date of July 12, 2025.[1]  As of the date of this Order, Soto-Mendoza has served approximately

5  75% of his sentence.  Soto-Mendoza asserts that, with good time credit, he has served

6  approximately 83% of his sentence of incarceration.

7        Soto-Mendoza is 52 years old, with a date of birth of July 19, 1969.  He asserts he

8  contracted COVID-19 and that his breathing and stomach have not been the same since.

9  Motion (Doc. 244, p. 5).  The government asserts, however, that the medical records do not

10  support Soto-Mendoza's assertion that he contracted COVID-19.  Additionally, the Amended

11  Motion asserts Soto-Mendoza is obese.  While the government does not dispute this, it points

12  out that Soto-Mendoza is slightly overweight and "has no other maladies commonly

13  associated with Obesity such as diabetes-2 or hypertension."  Response (Doc. 260, p. 11).

14  The government has provided documentation establishing Soto-Mendoza has been

15  vaccinated with two doses of the COVID-19 Pfizer-BioNTech vaccine.

16        Soto-Mendoza points out that he has a BMI of over 28.  However, according to the

17  CDC, if a BMI is 25.0 to < 30, the person falls within the overweight range instead of an

18  obesity range.  Defining Adult Overweight and Obesity, https://www.cdc.gov/obesity/

19  basics/adult-defining.html (last accessed July 6, 2022).  For purposes of this Order, this Court

20  accepts that Soto-Mendoza is overweight, nearly obese, and previously contracted COVID-

21  19.

22

23  *First Step Act*

24        The First Step Act went into effect on December 21, 2018. See First Step Act of 2018,

25  Pub. L. No. 115-391, 132 Stat. 5194. Prior to the passage of the First Step Act, only the

26

27        [1]Defendant Marcos Soto-Mendoza is identified as Marco Soto-Mendoza on the

28  Bureau of Prisons website.

Director of the BOP could file a motion for compassionate release.  Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release."  Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted).  That section now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . " 18 U.S.C. § 3582(c)(1)(A).

The Act provides that a sentence may be reduced for "extraordinary and compelling reasons."  Additionally, district courts are granted broad discretion in determining whether to grant relief.  *US v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D. Cal. May 21, 2020), *citation omitted*.

*Exhaustion of Remedies*

The statute clearly imposes an administrative exhaustion requirement before seeking review by a district court.  *See e.g., United States v. Weidenhamer*, No. CR1601072001 PHXROS, 2019 WL 6050264, at *1 (D. Ariz. Nov. 8, 2019).  The parties agree the exhaustion requirement has been met in this case.  The Court finds, therefore, Soto-Mendoza has exhausted his administrative remedies.

*Request for Compassionate Release*

Soto-Mendoza cites his vulnerability to COVID-19 based on his obesity and prior contraction of COVID-19 as a reason warranting compassionate release.  The government does not dispute that obesity may make Soto-Mendoza more susceptible to contracting COVID-19.  *See* Center for Disease Control and Prevention ("CDC"), Coronavirus, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July

5, 2022); CDC Updates, Expands List of People at Risk of Severe COVID-19, illness,https://www.cdc.gov/media/releases/ 2020/p0625-update-expands-covid-19.html (last accessed July 5, 2022).[2]  However, as previously stated, Soto-Mendoza is overweight, not obese.  However, because Soto-Mendoza is overweight and over the age of 50, for purposes of this Order, the Court finds Soto-Mendoza's medical condition may make him slightly more likely to get very sick from COVID-19 should he contract the illness.

However, obesity in the prison system is not uncommon.  Indeed, a U.S. Department of Justice Report indicates that a "majority of prisoners (74%) and jail inmates (62%) were overweight, obese, or morbidly obese." Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-2012, NCJ 248491 (Revised Oct. 4, 2016), https://www.google.com/url?client=internal-element-cse&cx=01584196504226064512: 8qeg8tt4g1g&q=https://bjs.ojp.gov/content/pub/pdf/mpsfpji1112.pdf&sa=U&ved=2ahU KEwiE2JaL3-T4AhUCFVkFHfLnB6EQFnoECAMQAQ&usg=AOvVaw3MsNB8LOme sRTVXpo-Gzbl (last accessed July 6, 2022); *see also* Medical Problems Reported by Prisoners, NCJ 252644 (June 2021), https://bjs.ojp.gov/sites/g/files/xyckuh236/files/ media/document/mprpspi16st.pdf (last accessed July 6, 2022).  In other words, Soto-Mendoza's near obesity is not extraordinary.

Further, the immunity provided by vaccination, while not complete, is high.  CDC Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/ vaccine-induced-immunity.html (last accessed July 5, 2022).  Indeed, although Soto-Mendoza asserts he is "among those with the highest risk of death or serious illness from

---

[2]The Court finds it appropriate to take judicial notice of information provided on government websites.  *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 (9th Cir. 2015), *citations omitted* (the Court may take judicial notice of "official information posted on a governmental website, the accuracy of which [is] undisputed"); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies), *citations omitted*.

COVID-19[,]" Am. Motion (Doc. 257, p. 13), Soto-Mendoza has not yet reached the age ranges with the highest contraction or death rates.  COVID-19 Deaths by Sex and Age, https://data.cdc.gov/widgets/9bhg-hcku?mobile_redirect=true (last accessed July 5, 2022). Moreover, "vaccines continue to be highly effective against severe illness, hospitalization, and death among people infected with the Delta variant." CDC  Science Brief:  Omicron (B.1.1.529)  Variant,   https://www.cdc.gov/coronavirus/2019-ncov/science/ science-briefs/scientific-brief-omicron-variant.html (last accessed July 5, 2022).  The Court considers that, while vaccination does not completely prevent the illness, the risk of long-term disability, or death, is a factor to consider whether extraordinary and compelling reasons for compassionate release have been shown.

Soto-Mendoza points out that prison conditions create the ideal environment for the transmission of contagious diseases.  Am. Motion (Doc. 257, p. 8).  Indeed, crowding, inadequate ventilation, security issues, and inadequate medical care/staffing contributes to the spread of infectious disease in prison.  Am. Motion (*Id*. at pp. 9, 10 n. 1).  However, at this time, there are no confirmed COVID-19 cases at the Manchester FCI, the facility in which Soto-Mendoza is housed.  Bureau of Prisons, COVID-19 Cases, Private Facilities, https://www.bop.gov/coronavirus/index.jsp (last accessed July 5, 2022).[3]

Moreover, Soto-Mendoza has not shown that he receives inadequate or delayed care at his facility.  *See United States v. Flowers*, No. 3:16-CR-00035-SLG, 2020 WL 4495454, at *3 (D. Alaska Aug. 3, 2020 (defendant bears the burden of establishing "compelling and extraordinary reasons exist that justify compassionate release"). For example, Soto-Mendoza has not specified or cited to any expert or written authority as to what additional tests or actions the facility should have taken as to his care.  As Soto-Mendoza has the burden to establish compassionate release is warranted, the Court finds Soto-Mendoza has failed to show that the facility "is unable to monitor and adequately treat his medical conditions."

---

[3]Historically, this facility has had no inmate or staff deaths, 494 inmate recoveries, and 236 staff recoveries.  BOP COVID-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last accessed July 5, 2022).

1   *United States v. Hernandez*, No. 118CR00152DADBAM, 2020 WL 5797896, at *6 (E.D.

2   Cal. Sept. 29, 2020), *citing United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL

3   704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison

4   are not a sufficient basis for compassionate release.").

5            A term of imprisonment may be modified after it has been imposed under 18 U.S.C.

6   § 3582(c)(1)(A)(I) after a court considers "the factors set forth in section 3553(a) to the

7   extent that they are applicable" if "extraordinary and compelling reasons warrant such a

8   reduction."   18 U.S.C. § 3582(c)(1)(A)(I). Such a reduction must be "consistent with

9   applicable policy statements issued by the Sentencing Commission." *Id*. However, the Ninth

10  Circuit has held, that the Sentencing Commission's policy statement set forth at U.S.S.G. §

11  1B1.13 applies only to motions for a sentence reduction filed by the director of the Bureau

12  of Prisons, and not to motions filed by or on behalf of defendants who have met the

13  exhaustion requirement in § 3582(c)(1)(A).  *United States v. Aruda*, 993 F.3d 797 (9th Cir.

14  2021).  As the Sentencing Commission has not updated § 1B1.13 since § 3582(c)(1)(A) was

15  amended to allow a defendant to file a motion after exhausting his administrative remedies,

16  the Commission "has not yet issued a policy statement 'applicable' to" such motions.  *Id*. at

17  802.  Although the statements in U.S.S.G. § 1B1.13 may inform a district court's discretion

18  for § 3582(c)(1)(A) motions filed by a defendant, "they are not binding."  *Id*., *citing United

19  States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).  Therefore,  "district courts are

20  empowered to consider any extraordinary and compelling reason for release that a defendant

21  might raise." *Id*. at 801, *quoting United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020);

22  *see, e.g., United States v. Brown*, No. 4:05-CR-00227-1, 411 F.Supp.3d 446, 449, 2019 WL

23  4942051, at *2 (S.D. Iowa Oct. 8, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019

24  WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, 423 F. Supp. 3d 345,

25  351 (S.D. Tex. 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3

26  (D. Me. July 11, 2019).  While the Court is informed by this Policy, the Court recognizes the

27  guidance by this Policy, however, is limited, because, by its terms "the policy-statement

28

1   provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the

2   statute and thus does not comply with the congressional mandate that the policy statement

3   must provide guidance on the *appropriate use* of sentence-modification provisions under §

4   3582." *Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019).

5       The Court considers that Soto-Mendoza's "medical conditions do not rise to the level of

6   terminal illness or substantially diminish [Soto-Mendoza's] ability to provide self-care from

7   within [the facility]" *United States v. Wilfred*, 2020 WL 4365531, at *4 (E.D. La. July 30, 2020).

8   Further, the Court has concluded that Soto-Mendoza has not shown that he is not receiving

9   adequate care for any serious medical condition.

10       The Court recognizes that compassionate release takes "on added weight because of

11   the COVID-19 virus raging across the globe." *United States v. Esparza*, No.

12   1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) *Esparza*, 2020 WL

13   1696084 at *2.  However, as stated by government officials, "This is becoming a pandemic

14   of the unvaccinated." https://www.whitehouse.gov/

15   briefing-room/press-briefings/2021/07/16/press-briefing-by-white-house-covid-19-respon

16   se-team-and-public-health- officials-45/ (last accessed July 6, 2022).  In fact, "[t]he good

17   news is that if you are fully vaccinated, you are protected against severe COVID,

18   hospitalization, and death, and are even protected against the known variants — including

19   the Delta variant — circulating in the country." *Id*.; *see also*

20   https://www.whitehouse.gov/wp-content/uploads/2021/07/COVID-Press-Briefing_

21   16July2021_for-transcript.pdf (last accessed July 6, 2022); *see also* National COVID-19

22   Preparedness Plan, https://www.whitehouse.gov/covidplan/ (last accessed July 6, 2022).

23       In light of the current conditions at Manchester FCI and Soto-Mendoza's vaccinated

24   status, the Court, in its discretion, "cannot conclude, particularly in light of his vaccination, that

25   [Soto-Mendoza's] current exposure to COVID-19 presents "extraordinary and compelling

26   reasons" to justify his release pursuant to 18 U.S.C. § 3582(c)(1)(A).  *See United States v.*

27   *Cortez*, No. CR180085801PHXSPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021)

28

(collecting cases). Simply put, Soto-Mendoza "cannot satisfy his burden in demonstrating that COVID-19 still poses a severe risk to him now that he is fully vaccinated." *United States v. Upshaw*, No. 1:14-CR-00256-NONE, 2021 WL 2417012, at *1 (E.D. Cal. June 14, 2021). Indeed, Soto-Mendoza has not shown that he is less likely to be reinfected with COVID-19 if released.

Even considering the non-binding Policy statement of the Sentencing Commission, Soto-Mendoza's health, in addition to the risk of COVID-19, does not constitute extraordinary and compelling reasons for compassionate release. The applicable Application Note provides extraordinary and compelling reasons may be shown where a "defendant(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, App. Note 1(B). While Soto-Mendoza has served more than 75% of his term of imprisonment, his medical condition is not extraordinary. The Court finds Soto-Mendoza has not shown reasons, or a combination of reasons, that are extraordinary and compelling reasons warranting compassionate release.

In sum, the speculative possibility of contracting COVID-19, even when combined with Soto-Mendoza's age and health, is not an extraordinary and compelling reason to release him now, particularly considering BOP's efforts to contain the spread of COVID-19 in its facilities and privately-contracted facilities. Nor has Soto-Mendoza provided any evidence that he will be less likely to contract COVID-19 if released. Soto-Mendoza'a circumstances are, in the present pandemic/endemic,[4] far closer to ordinary than "extraordinary."

*18 U.S.C. § 3553(a)*

Even if the Court found that extraordinary and compelling reasons had been demonstrated by Soto-Mendoza, the Court would also need to consider the § 3553(a) factors

---

[4] Is Covid-19 endemic yet? Experts aren't so sure, https://edition.cnn.com/2022/04/13/world/coronavirus-newsletter-intl-13-04-22/index.html (last accessed July 6, 2022).

before determining whether compassionate release is appropriate.  Indeed, the requirement that the reduction is consistent with Sentencing Commission policy focuses on community safety.  The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).  Factors to consider include the nature of the offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or community posed by a defendant. *Id*.; *see also* 18 U.S.C. § 3142(g) factors.

Soto-Mendoza's criminal history includes misdemeanor convictions for assault, DUI, and a felony conviction for Illegal Re-Entry of Removed Alien.  Further, the pre-sentence report for the offenses in this case indicate a disregard for others.  Specifically, while guiding migrants through the desert, Soto-Mendoza repeatedly told the migrants they would be resupplied with water, but Soto-Mendoza never led them to a water source.  Soto-Mendoza also refused to call for help when the group had no water and was suffering from dehydration.  One of the migrants led Border Patrol agents to find three other living migrants and two deceased migrants.  Although Soto-Mendoza asserts he will not pose a threat to public safety if he is granted compassionate release because he will be removed to Mexico, Soto-Mendoza has been deported 12 times, but has continued to return to the United States.  The Court finds Soto-Mendoza continues to be a danger to the community.

Soto-Mendoza was sentenced to 120 months and 180 months in the custody of the Bureau of Prisons, with the sentences to run concurrently.  This was below the Sentencing Guideline range of 188 months to 235 months because of the statutorily authorized maximum sentences allowed for the offenses.  While Soto-Mendoza's sentence adequately reflected the seriousness of the offense, promoted respect for the law, provided a just punishment for the offense, and provided an adequate deterrence to criminal conduct, a reduction of the sentence would not further these goals.  The Court also considers that a reduced sentence would result in sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*Conclusion*

In its discretion, the Court declines to find compassionate release is warranted in this case. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (holding district court did not abuse its discretion by denying compassionate release despite defendant's eligibility for that relief).

Accordingly, IT IS ORDERED:

1.      The Motions for Compassionate Release/Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A)  (Docs. 244, 257) are DENIED.

2.      The Clerk of Court shall mail a copy of this order to Marcos Soto-Mendoza at:

> Marcos Soto-Mendoza No. 52560-208
> Manchester FCI
> P.O. Box 4000
> Manchester, KY  40962

DATED this 6th day of July, 2022.

Cindy K. Jorgenson
United States District Judge